UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case No. 20-cv-22967-BLOOM/Louis

OPTIMUS MSO II, INC.,

    Plaintiff,

vs.

SIMPLY HEALTHCARE PLANS,
INC.,

    Defendant.
_____/

## PLAINTIFF'S MOTION FOR SANCTIONS AND TO COMPEL COMPLIANCE WITH F.R.C.P RULES RELATING TO FAILURE TO PRODUCE DOCUMENTS

Plaintiff, OPTIMUS MSO II, INC. ("Plaintiff" or "Optimus"), by and through their undersigned counsel, hereby submits its MOTION FOR SANCTIONS AND TO COMPEL COMPLIANCE WITH F.R.C.P RULES RELATING TO DEFENDANT'S FAILURE TO PRODUCE DOCUMENTS (the "Motion"). In support thereof, Plaintiff states as follows:

## INTRODUCTION

Defendant has violated its basic discovery obligations by failing to reasonably search for potentially responsive documents and by failing to produce clearly responsive documents during the course of discovery. As explained below, Plaintiff was unaware of Defendant's violations of its basic discovery obligations until Plaintiff recently took the deposition of Defendant's 30(b)(6) designated representative. As revealed during said deposition, Defendant has failed to comply with the Federal Rules of Civil Procedure.

As a result of Defendant's inexplicable failure to search for and produce clearly responsive documents, Plaintiff has been severely prejudiced. Defendant should be

1

compelled to promptly search for and produce all responsive documents and this Court should enter sanctions against Defendant.

During the deposition of Defendant's Corporate Representative on August 31, 2021, Mr. Ken Morreale stated that there were entire categories of relevant responsive documents Defendant inexplicably failed to produce, notwithstanding Defendant's admitted knowledge that responsive documents were in Defendant's possession, custody, or control.

As discussed below, Defendant has either intentionally withheld responsive items from Plaintiff or, at a minimum, Defendant conducted an entirely insufficient search for such items in violation of the Federal Rules of Civil Procedure. Following the August 31, 2021 deposition, Plaintiff requested that Defendant promptly remedy its discovery abuses. Such requests have been rebuffed or ignored. As a result, Plaintiff has is left with no choice but to seek sanctions and to seek that Defendant be forced to promptly produce the classes of documents that have been wrongfully omitted from Defendant's document production.

## **DEFENDANT FAILED TO PRODUCE DOCUMENTS/ESI EXCHANGED BETWEEN DEFENDANT AND CMS**

Plaintiff discovered during the August 31, 2021 deposition of Defendant's 30(b)(6) representative that Defendant had inexplicably failed to produce responsive and highly relevant materials exchanged between Defendant and CMS.

Although Defendant did produce Defendant's internally generated financial spreadsheets relating to Plaintiff's members in native ESI format, the actual source financial ESI that Defendant had exchanged with CMS relating to Plaintiff's members was inexplicably withheld from Defendant's document production. *See* Morreale Tran., 100:12-

102:4 (admitting that financial spreadsheets that were produced were internally generated from other underlying ESI data).[1]

As a result, the spreadsheets produced by Defendant are, at best, mere summaries of the underlying ESI exchanged between Defendant and CMS. *See* Morreale Tran., 100:12-102:4 (discussing how Defendant's internally generated spreadsheets are based on original "raw" ESI that was in Simply's database); *Id.* at 203:7-25 (admitting that Defendant's internally generated spreadsheets are merely a "depiction" or "summary" of the real financial information exchanged between Defendant and CMS).

In effect, Defendant has admitted that it produced internally generated reports or summaries related to Plaintiff's Medicare and Medicaid members, but that the original "raw" financial information relating to said members was withheld from Defendant's production. *See* Morreale Tran., 102:22-103:21 (admitting that the internally generated spreadsheets produced by Defendant were based on "raw" financial data and that log files relating to such data are in Defendant's possession, custody, and control); *see also Id.* at 105:20-106:12 (admitting that the witness is familiar with the raw data and log files relating to Plaintiff's members that were used to create Defendant's spreadsheets); *Id.* at 120:6-10 (admitting that the "raw" financial information and log files relating to Plaintiff's members is "vast," but that such "raw" financial information that has been withheld from production could indeed be produced); *Id.* at 203:7-25 (admitting that the spreadsheets produced by Defendant are a "depiction" or "summary" of the original raw financial information exchanged between Defendant and CMS, but said original financial information has never been produced by Defendant); *Id.* at 212:1-10 (admitting that Defendant has never produced or supplied "the underlying data" that Defendant exchanged with CMS relating to Plaintiff's members).

---

[1] The transcript of Mr. Morreale's 30(b)(6) deposition is attached hereto as **Exhibit "A."**

Defendant's decision to produce internally generated reports or summaries, while secretly omitting the original "raw" financial information from Defendant's production is inexcusable and highly prejudicial to the Plaintiff. See Morreale Tran., 201:17-202:4 (admitting that the accuracy of the financial information contained in the internally generated spreadsheets produced by Defendant cannot be verified for accuracy without the original "raw" financial information exchanged between Defendant and CMS in the form of "MMR files" that were not produced by Defendant); *Id*. at 204:14-205:11 (admitting that the spreadsheets produced by Defendant *do not* include the "raw transactional files [Defendant] received from CMS," but that said spreadsheets are merely "a depiction of what those [raw] files tell us" and that the files Defendant received from CMS were never produced to Plaintiff).

Plaintiff had been told by Defendant that all responsive documents and ESI had been produced during discovery, but this was manifestly untrue. Prior to the deposition of Defendant's 30(b)(6) representative on August 31, 2021, Plaintiff had been lead to believe that the spreadsheets produced by Defendant contained all of the financial information related to Plaintiff's members. After the August 31, 2021 deposition, it was clear that Defendant had intentionally omitted the financial ESI relating to Plaintiff's members that Defendant had regularly exchanged with CMS. Because this litigation hinges to a large degree on Defendant's purported "reconciliations" of financial information relating to Plaintiff's members, or Defendant's failure to conduct said "reconciliations," the underlying financial ESI relating to Plaintiff's members is of central importance. Moreover, the accuracy of Defendant's spreadsheets is directly in dispute; which renders the original "raw" financial ESI exchanged between Defendant and CMS even more important to this litigation.

Defendant's refusal to produce the original "raw" financial ESI exchanged between Defendant and CMS relating to Plaintiff's members is particularly inexcusable because such

4

information was clearly requested in Plaintiff's First Request for Production to Defendant. Plaintiff long ago issued, *inter alia*, the following requests for production to Defendant:

> 6) All Documents or Communications exchanged between You and any third-party referring or relating in any way to the Optimus Health Plan.
>
> 10) All Documents or Communications exchanged between You and any regulatory entities (including Federal, State, or Local regulatory entities) referring or relating in any way to the Plaintiff.
>
> 11) All Documents or Communications exchanged between You and any regulatory entities (including Federal, State, or Local regulatory entities) referring or relating in any way to the Optimus Health Plan.

In response to each of the foregoing requests for production, Defendant asserted that "it has no non-privileged documents responsive to [the above] request[s]." *See* Defendant's Response to Plaintiff's First Request for Production, attached hereto as **Exhibit "B."** Since Defendant has never provided a privilege log in this litigation. As a result, the failure to produce clearly responsive ESI exchanged between Defendant and CMS, an entity which directly falls within the scope of "Federal, State, or Local regulatory entities," is inexcusable and should result in appropriate sanctions.

In addition to the foregoing requests, Plaintiff also requested the following categories of documents in its First Request for Production to Defendant:

> 19) All Documents or Communications referring or relating to any premiums, deductibles, setoffs, reimbursements, reconciliations, adjustments, or any other financial matters arising out of the Optimus Health Plan.
>
> 20) All Documents or Communications referring or relating to any premiums relating to the Optimus Health Plan.
>
> 21) All Documents or Communications referring or relating to any deductibles relating to the Optimus Health Plan.
>
> 22) All Documents or Communications referring or relating to any reimbursements relating to the Optimus Health Plan.

> 23) All Documents or Communications referring or relating to any setoffs, reconciliations, or adjustments relating to the Optimus Health Plan.
>
> 25) All Documents or Communications referring or relating to any other financial matters arising out of the Optimus Health Plan.
>
> 26) All Documents or Communications referring or relating to the Medicare "Stop-Loss" protection insurance under the Optimus Health Plan.
>
> 27) All Documents or Communications referring or relating to Medicare Part D expenses/reimbursements under the Optimus Health Plan.

With respect to each of the foregoing requests, Defendant agreed "that it will produce non-privileged documents." *See* Defendant's Response to Plaintiff's First Request for Production, attached as Exhibit "B."

Notwithstanding Defendant's agreement to produce responsive documents, Defendant surreptitiously withheld from its production all of the financial ESI that Defendant had exchanged with CMS relating to Plaintiff, Plaintiff's Health Plan, and Plaintiff's members. By withholding responsive financial documents and ESI exchanged between Defendant and CMS relating to Plaintiff's members, Defendant has clearly violated its discovery obligations. Such violations have been, and remain, extremely prejudicial to Plaintiff.

## **LEGAL ARGUMENT**

This Court has the power to sanction Defendant due to its willful failure to comply with its discovery obligations under (a) its inherent authority; and (b) Federal Rule of Civil Procedure 37.

### I. **INHERENT AUTHORITY**

It is axiomatic that a Court has the inherent power to manage its docket and the conduct of the parties before it. In order to assist the Court with this process, litigants themselves have some responsibility for efficient and orderly proceedings before the court. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (11th Cir. 1993). They must abide

by the Federal Rules of Civil Procedure, and therefore may not cause delay to drive up opponents' costs and burden the court unnecessarily, nor employ the Rules as adversarial weapons. *Id*. at 1544.

District courts enjoy "broad discretion" to determine the appropriate remedies when there is inadequate production of documents or when presented with sluggishness or a lack of candor. *See In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 656 (M.D. Fla. 2007); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *Vasquez v. Princess Cruise Lines, Ltd.*, 2013 WL 12061869 (S.D. Fla. 2013) (*citing Chambers v. NASCO*, Inc., 501 U.S. 32, 46 (1991)).

When litigants violate their basic obligations, courts are empowered to fashion sanctions, including dismissal or entry of default. *Id*. at 1545–46 ("[D]eeply rooted in the common law tradition is the power of any court to manage its affairs [which] necessarily includes the authority to impose reasonable and appropriate sanctions upon errant lawyers practicing before it." (alterations in original) (quotation marks and citations omitted)); *Aztec Steel Co., A.F.S.C.O. v. Fla. Steel Corp.*, 691 F.2d 480, 481 (11th Cir. 1982) ("When a party demonstrates a flagrant disregard for the court and the discovery process, however, dismissal is not an abuse of discretion."). This power is potent, derived inherently from "the control necessarily vested in courts to manage their own affairs," *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337 (11th Cir. 2005).

## II.   B.  RULE 37

Rule 37 further authorizes a court to direct certain designated facts to be taken as established for the purposes of the action, prohibiting a disobedient party from supporting or opposing designated claims or defenses, striking pleadings in whole or in part, or staying further pleadings until the issue is remedied as sanctions for a party's discovery abuses.

Willful conduct, or, stated otherwise, "flagrant bad faith," "gross negligence," "callous disregard" or "willful disregard," amounts to bad faith.[2]

Defendant's failure to produce clearly responsive financial information exchanged with CMS falls within the scope of conduct that is sanctionable under Rule 37. In particular, after Plaintiff was first made aware of Defendant's failure to produce such highly relevant and responsive materials, Plaintiff requested on multiple occasions that Defendant remedy its discovery abuses by promptly producing the aforementioned "raw" financial data. Defendant has steadfastly refused to comply with its discovery obligations and has made no effort to remedy its inexplicable refusal to produce said documents. As a result of Defendant's intransigence, Defendant should be sanctioned and Defendant should be required to promptly produce all of the "raw" financial data exchanged with CMS relating to any of Plaintiff's members without further delay.

**WHEREFORE**, Plaintiff, OPTIMUS MSO II INC., requests entry of an order sanctioning Defendant for its inexcusable refusal to produce the highly relevant documents and electronically stored information exchanged between Defendant and CMS as referenced hereinabove. In the alternative, or in addition to the requested sanctions, Plaintiff moves for this Court to order Simply to immediately produce all documents or electronically stored information exchanged between Defendant and CMS that contain any information related to Plaintiff and/or related to any of Plaintiff's members. To the extent Defendant asserts that it no longer has access to such documents or electronically stored information, Plaintiff requests that Defendant be compelled to submit to a forensic inspection of their database(s). Plaintiff also requests that this Court grant Plaintiff its attorneys' fees and costs incurred

---

[2] *See United States v. Franklin*, No. 2:99-1-CV-FTM-29DNF, 2001 WL 670630, at 1–2 (M.D. Fla. Mar. 30, 2001) (willful disregard); *Sussman*, 154 F.R.D. at 298 (gross negligence); *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 131 (S.D. Fla. 1987) (flagrant bad faith or callous disregard).

with respect to the preparation of this Motion and any necessary hearings related to this Motion.

## CERTIFICATE OF GOOD FAITH CONFERENCE PURSUANT TO LOCAL RULE 7.1

Counsel for Plaintiff has repeatedly demanded that Defendant conduct a proper search for potentially responsive documents and for it to supplement its production accordingly. Defendant has steadfastly refused, even after Mr. Morreale's recent deposition. As a result, Plaintiff has been forced to file this Motion for Sanctions.

Dated: September 16, 2021.　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　**HIRZEL DREYFUSS & DEMPSEY PLLC**
　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*
　　　　　　　　　　　　　　　　　　　2333 Brickell Ave, Suite A-1
　　　　　　　　　　　　　　　　　　　Miami, Florida 33129-2497
　　　　　　　　　　　　　　　　　　　Telephone: (305) 615-1617
　　　　　　　　　　　　　　　　　　　Facsimile: (305) 615-1585

　　　　　　　　　　　　　　　　　　　By: /s/ *Patrick G. Dempsey*
　　　　　　　　　　　　　　　　　　　　**LEON F. HIRZEL**
　　　　　　　　　　　　　　　　　　　　Florida Bar No. 085966
　　　　　　　　　　　　　　　　　　　　hirzel@hddlawfirm.com
　　　　　　　　　　　　　　　　　　　**PATRICK G. DEMPSEY**
　　　　　　　　　　　　　　　　　　　　Florida Bar No. 27676
　　　　　　　　　　　　　　　　　　　　dempsey@hddlawfirm.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was served via CM/ECF Notification to all parties registered to receive electronic notice on this 16th day of September, 2021.

　　　　　　　　　　　　　　　　　　　By: /s/ *Patrick G. Dempsey*
　　　　　　　　　　　　　　　　　　　　**PATRICK G. DEMPSEY, ESQ.**